UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.                                      )<br>)<br>DAE SUNG KIM,                      )<br>)<br>        Defendant.                 ) | Criminal No: 4:24-cr-40032-MRG |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys Leah B. Foley, United States Attorney for the District of Massachusetts, and Special Assistant U.S. Attorney James J. Nagelberg and Assistant U.S. Attorney Brendan D. O'Shea, hereby submits this sentencing memorandum as to defendant Dae Sung Kim (the "Defendant"). The Government respectfully recommends that the Court impose a sentence of 12 months of prison, five years' supervised release, order restitution to an individual victim ("PERSON 1") in the amount of $360, and impose a special assessment of $100. This sentence represents the bottom of the applicable advisory guideline sentencing range ("GSR") and would not be greater than necessary to achieve the purposes of sentencing delineated in 18 U.S.C. § 3553(a)(2). The Government leaves the issue of a fine to the Court's discretion.

## BACKGROUND

Over an approximate seven-month period, the Defendant, while employed at the Social Security Administration ("SSA") as a Claims Specialist, attempted to exploit a vulnerable disabled mother ("PERSON 1") seeking to apply for the reinstatement of disability benefits after losing her job. In contravention of his oath as a federal employee,[1] the Defendant abused his access to PERSON 1's personally identifiable information ("PII") in SSA's computer systems to contact her

---

[1] 5 U.S.C. § 3331.

after he handled an appointment for her at the SSA field office in Gardner, and then solicited sex for money. Because he knew PERSON 1 lived in New Hampshire and he attempted to get her to come to Massachusetts to prostitute herself, the Defendant violated the Mann Act. The Defendant's egregious conduct warrants a meaningful term of incarceration.

## DISCUSSION

I.  **Sentencing Guidelines Calculation**

In the final presentence investigation report ("PSR") dated May 27, 2025, the United States Probation Office found that the Defendant's total offense level ("TOL") is 13. PSR ¶ 49. This includes a base offense level of 14 pursuant to U.S.S.G. § 2G1.1(a)(2); plus 4 levels pursuant to U.S.S.G. § 2G1.1(b)(1) because the offense involves the attempted coercion of a victim in a vulnerable state; minus 2 levels pursuant to U.S.S.G. § 4C1.1(a) and (b) because the defendant is a Zero-Point Offender; and minus 3 levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). PSR ¶¶ 40-48. After determining that the Defendant has 0 criminal history points and is in criminal history category ("CHC") I, PSR ¶¶ 53-54, Probation calculated the advisory GSR to be 12 to 18 months imprisonment in Zone C of the Sentencing Table. PSR ¶ 90. The Government agrees with the advisory guideline calculation and the Defendant has not filed any objections. The Defendant faces a statutory maximum of 20 years' imprisonment on the Attempted Coercion or Enticement (18 U.S.C. § 2422(a)) conviction; a statutory minimum of 5 years of supervised release up to a maximum of life; and a statutory maximum of 5 years' probation. PSR ¶¶ 89, 92, 94.

II. **Application of the Section 3553(a) Factors**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of

sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available and the GSR. Here, the Government believes that the proposed sentence of 12 months' imprisonment, 5 years' supervised release, restitution in the amount of $360, and the mandatory special assessment fee of $100, is sufficient, but not greater than necessary, to achieve the goals of § 3553(a)(2).

## A. Nature and Circumstances of the Offense

According to the victim impact statement submitted by SSA Regional Commissioner Anatoly Shnaider, SSA operates approximately 1,230 field offices nationwide. As Mr. Shnaider states, "[i]n many ways, SSA's field office employees are the face of SSA to the public." The Defendant was one of these employees.

On March 8, 2024, the Defendant handled an in-person office visit with PERSON 1 at the SSA field office in Gardner, Massachusetts. PSR ¶ 8. PERSON 1 was visibly upset and crying as she entered the SSA office looking for help to reinstate her disability benefits after losing her job. Id. As PERSON 1 describes in her victim impact statement: "I was devastated, ashamed, and scared. I walked in the Social Security office that day not just for benefits—but for hope. I was crying, reeling, and desperate to find a way to support my family." The Defendant ultimately provided forms to the Defendant to complete but redirected her to a New Hampshire SSA field office for processing because of her residence in that state. Id.

Approximately 20 minutes later, the Defendant called PERSON 1 from his personal cell phone using information he had improperly obtained from SSA's computer systems. PSR ¶¶ 9, 34. He told PERSON 1 that he understood she was in a "difficult situation" and that "maybe they could work something out that would benefit them both." PSR ¶ 9. As PERSON 1 states in her victim impact statement, she was in "shock" because "[a] government employee—someone entrusted to protect and serve the public—used my private information to prey on me in one of my most vulnerable moments." PERSON 1 declined the Defendant's offer and, instead, contacted law enforcement and SSA.

During the ensuing investigation, the Defendant clarified in text messages and a consensually monitored phone conversation that he was proposing to pay PERSON 1 for sex and attempted to negotiate a price. PSR ¶¶ 13-15. The Defendant continued his solicitation over a period of several months through text messages with an undercover law enforcement agent impersonating PERSON 1, including several requests for nude photographs that were declined. PSR ¶¶ 16-31. Eventually, the Defendant proposed that PERSON 1 travel from New Hampshire to the parking lot of the Great Wolf Lodge in Fitchburg, Massachusetts to have sex in a car in exchange for $100. PSR ¶¶ 27-31. On October 11, 2024, the Defendant arrived at the agreed-upon location with $200 cash and was confronted by law enforcement, to whom he admitted his intent to pay PERSON 1 for sex after she had traveled from New Hampshire. PSR ¶¶ 32-35.

Mr. Shnaider provides context for the nature of the Defendant's conduct in the larger picture of SSA's operations:

> While instances of SSA employee criminal misconduct are rare, they can be devastating. When an SSA employee abuses their position, the crime is a violation of a basic trust between citizens and their government. It is vital that the public feel safe when contacting SSA for assistance and confident that their private information is secure. . . . Mr. Kim made specific reference to the victim's financial situation after losing a job in attempting to get her to agree to his solicitation. These

4

> are facts which Mr. Kim was privy to only because of his SSA employment. Simply put, Mr. Kim would not have been able to commit this crime but for his SSA employment. Criminal conduct like Mr. Kim's adversely affects the confidence of the American people in the programs administered by SSA and makes them less likely to seek the benefits to which they are entitled.

PERSON 1 voiced similar concerns about how the Defendant could have targeted other SSA visitors:

> This man—this government employee—didn't just try to exploit me. He created a situation that could have exploited any woman who walked into that office needing help. Any woman who was disabled, hurting, or struggling to hold her life together. Any woman who might have felt she didn't have a choice but to say yes. . . . This was not a misstep. This was not a lapse in judgment. This was **predatory abuse of power**. He tried to take advantage of my disability, my gender, my circumstances, and my humanity.

(emphasis in original). Finally, PERSON 1 described the toll that the Defendant's actions had on her personally:

> I lived in fear. This man knew everything about me—where I lived, who I was married to, how many children I had. I was terrified he might show up at my door. I couldn't sleep. I was constantly looking over my shoulder, worried he might find a way to reach me or my children. Even now, I feel anxious and on edge whenever I think about needing help or stepping into the Social Security office again. What was supposed to be a place of support has become a trigger for fear and distrust. I worry that asking for help could once again make me a target.

The Government's recommended sentence reflects the nature and extent of the Defendant's crime, including his abuse of a position of public trust which he used to target a vulnerable victim in an attempt to get her to engage in prostitution across state lines.

### B. General Deterrence

General deterrence is also an important consideration in this case. See 18 U.S.C. § 3553(a)(2)(B). The importance of generally deterring criminal misconduct by federal employees, especially those in public facing roles dealing with vulnerable populations, is a key reason for imposing sentences demonstrating serious consequences for such conduct. As Mr. Shnaider points

5

out, but for his employment at SSA, the Defendant would not have been able to commit this crime. Here, the Government's recommended sentence including a period of incarceration would be sufficient to deter other public servants from engaging in similar conduct.

### C. *Comparison of Sentence to Defendants with Similar Records and Conduct*

Pursuant to 18 U.S.C. § 3553(a)(6), the Court must consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. According to Judiciary Sentencing Information ("JSIN") data provided in the PSR, over the last five fiscal years, for the 9 defendants with the same primary sentencing guideline (2G1.1), offense level (13), and criminal history category (I) as the Defendant, **78%** received a sentence of imprisonment in whole or in part. See PSR ¶ 103. For these 9 defendants, the average prison sentence imposed was 34 months and the median was 12 months. Id. Thus, the Government's recommendation of a term of 12 months' imprisonment is consistent with the sentences imposed for defendants with similar U.S.S.G. characteristics nationwide.

Within this jurisdiction, the most recent sentence imposed for an SSA employee that committed criminal conduct in the workplace is United States v. Julio Klapper, No. 4:17-cr-40022-TSH. In that case, an SSA employee was charged under 18 U.S.C. § 201(b)(2) with taking bribes to fraudulently alter the records of Supplemental Security Income ("SSI") beneficiaries to increase payments to them. Id., ECF 48 at 2. Klapper targeted the mothers of disabled children and, in one case, also sought sexually suggestive photos from the mother. Id., ECF 48 at 4. While Klapper is distinguishable because he enriched himself with over $70,000 in government funds, the targeting of a vulnerable beneficiary population through a position of public trust and the request for sexually explicit photographs are similar to the case here. Klapper also had a higher GSR of 30-37 months of prison based on a CHC I/TOL 19. Id., ECF 52 at 1. In providing a below-guidelines

sentence of 15 months' imprisonment, Judge Hillman cited the 3553(a) factors and, while noting mitigating factors, found that the prison sentence "provide[d] reasonable deterrence from future crimes." Id., ECF 52 at 4.

### D. The Kinds of Sentences Available and the GSR

The Court must also consider the kinds of sentences available and the sentencing range under the advisory guidelines. 18 U.S.C. §§ 3553(a)(3)-(4). Because the Defendant is at a CHC I/TOL 13, the GSR is 12-18 months' imprisonment in Zone C. PSR ¶ 90. As the Defendant is in Zone C, the sentencing guidelines advise that a sentence of imprisonment should be imposed for at least half the minimum GSR term, with the option to make the other half served in community confinement or home detention. Id. (citing U.S.S.G. § 5C1.1(d)). Accordingly, the Government's recommendation of 12 months' imprisonment is consistent with the advisory guidelines.

### III. CONCLUSION

For all these reasons, the Government submits that a sentence of 12 months' imprisonment, although significant for someone without any criminal history, is both necessary and appropriate after taking into consideration all of the factors set forth under 18 U.S.C. § 3553(a). Additionally, the Government respectfully requests that the Court sentence the Defendant to the statutory minimum of five years' supervised release pursuant to 18 U.S.C. § 3583(k), order restitution in the amount of $360, and impose a special assessment of $100.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ James J. Nagelberg*
JAMES J. NAGELBERG
Special Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3239
james.nagelberg@usdoj.gov

BRENDAN D. O'SHEA
Assistant United States Attorney
United States Attorney's Office
Harold D. Donohue Federal Building
595 Main Street
Worcester, MA 01608
(508) 368-0106
brendan.oshea2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Dated: July 3, 2025

*/s/ James J. Nagelberg*
Special Assistant U.S. Attorney