UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
 )
   v. ) Case No: 4:24-CR-40032-MRG
 )
DAE SUNG KIM )

OMNIBUS MOTION FOR DEPARTURE,
OBJECTIONS, AND SENTENCING MEMORANDUM

Defendant, DAE SUNG KIM, moves this Honorable Court for departure from the guideline sentencing range ("GSR"); objects to certain paragraphs in the May 27, 2025, Presentence Investigation Report ("PSR"); and respectfully submits this memorandum in support of his request for a sentence of 3 years supervised probation.  A sentence of 3 years supervised probation is sufficient, but not greater than necessary to serve the purposes of sentencing in 18 U.S.C. § 3553(a).

<u>Grounds for Departure from GSR</u>

On February 27, 2025, the defendant pled guilty to the information charging 1 count of attempted coercion and enticement in violation of 18 U.S.C. § 2422(a).  The United States Attorney charges:

> From on or about March 8, 2024, through on or about October 11, 2024, in the District of Massachusetts and elsewhere, the defendant, DAE SUNG KIM, did attempt to persuade, induce, or entice an individual- to wit, Person 1- to travel in interstate commerce with the intent that Person 1 engage in prostitution and in any sexual activity for which any person can be charged with a criminal offense.  All in violation of Title 18, United States Code, § 2422(a).  (Doc. No. 21).

Prosecutions under the Mann Act typically involve the transportation of sex workers across state lines for prostitution to third-party sex buyers. This case is atypical. Here, the defendant is an employee of the Social Security Administration that attempted to reach an agreement with an adult, social security beneficiary to travel from New Hampshire to Massachusetts for the purpose of engaging in sexual conduct for a fee of $100.00 cash, with the defendant. In atypical fashion, the government relies upon the Massachusetts state crime of sexual conduct for a fee, G.L. c. 272, § 53A, to meet the "any sexual activity for which any person can be charged with a criminal offense" element of 18 U.S.C. § 2422(a). See PSR paragraph 30.

A departure from the GSR is appropriate here where the offense conduct for this Mann Act prosecution does not involve a sex buyer other than the defendant himself. See PSR paragraphs 7-35.

### Objections to PSR

OBJECTION NUMBER ONE:

The defendant objects to paragraphs 41 and 95 of the PSR. The specific offense characteristic of "coercion" for United States Sentencing Guidelines ("USSG") § 2G1.1(b)(1) does not apply. While paragraphs 8 and 9 of the PSR are factually

accurate, such conduct does not meet the definition of "coercion" set forth in the Application Note number 2 entitled "Application of Subsection (b)(1). Subsection (b)(1) provides an enhancement for fraud or coercion that occurs as part of the offense and anticipates no bodily injury...

> For the purposes of subsection (b)(1), "coercion" includes any form of conduct that negates the voluntariness of the victim. This enhancement would apply, for example, in a case in which the ability of the victim to appraise or control conduct was substantially impaired by drugs or alcohol. The characteristic generally will not apply if the drug or alcohol was voluntarily taken.

In this atypical case, the offense conduct in paragraphs 7 through 35 of the PSR do not involve any form of conduct by the defendant negating the voluntariness of PERSON 1. The reliance of Probation upon paragraphs 8 and 9 of the PSR to overcome the voluntariness of PERSON 1, adding 4 points for an enhancement of fraud or coercion is misplaced.

Relying upon the application of "coercion" by Probation is bad public policy. Imposing a sentencing enhancement to an underlying offense based upon conduct that is an element of that underlying offense results in no enhancement at all. Rather, it imposes additional punishment for every single conviction. A sentencing enhancement should be applied where the offense conduct contains a particular aggravating fact or circumstance.

A specific offense characteristic is an enhancement based upon an aggravating fact or factor within the offense conduct. The voluntariness of PERSON 1 was not negated by the defendant's offense conduct.

The defendant incorporates his objection to paragraph number 95 on page 16 of the PSR. Removing the 4 points for the specific offense conduct in paragraph 41 of the PSR would result in an adjusted offense level total of 14 instead of 18 and a total offense level of 9 instead of 13. A total offense level of 9 places the defendant in Zone B of the Sentencing Table, leaving the defendant eligible for a probationary sentence. USSG § 5B1.1(a)(2).

OBJECTION NUMBER TWO:

The defendant objects to Mandatory Condition of Supervision number 5 on page 22 because his guilty plea does not make him a sex offender. The government has not proven beyond a reasonable doubt any fact involving images, a sexual act or sexual contact with another. The defendant's guilty plea to 18 U.S.C., § 2422(a) for an a*ttempt* to reach an *agreement* with PERSON 1 to engage in sexual conduct with the defendant for a fee of $100.00 fails to meet the definition of a sex offense in 34 U.S.C. § 20911(5)(A). See PSR paragraphs 7-35, Offense Conduct. The elements of the crime of sexual conduct for a fee, G.L. c. 272,

§ 53A, are satisfied merely by an agreement to engage in sexual conduct in exchange for a fee.  No sexual act by anyone or sexual contact with another is required.  The necessary elements of G.L. c. 272, § 53A do not require a sexual act or sexual contact with another.

A sex buyer commits the Massachusetts state crime of sexual conduct for a fee when paying, agreeing to pay, or offering to pay another person to engage in sexual conduct with him, her, or some third person.  *Commonwealth v. Garafalo*, SJC-13652 (Supreme Judicial Court, May 2, 2025).  See Instruction 7.480, Sexual Conduct for a Fee, Criminal Model Jury Instructions for Massachusetts District Court, 2009 Edition.

Here, the defendant is an employee of the Social Security Administration that attempted to reach an agreement with an adult, social security beneficiary to travel from New Hampshire to Massachusetts for the purpose of engaging in sexual conduct with the defendant in exchange for a fee of $100.00 cash.  See PSR paragraphs 7-35, Offense Conduct.  The term sex offender is defined in 34 U.S.C., § 20911(1).  In that subchapter, the term "sex offender" means an individual who was convicted of a sex offense.  The subchapter goes on in § 20911(5)(A) to definition sex offense as follows:

> Except as limited by subparagraph (B) or (C), the terms "sex offense" means-

(i)     a criminal offense that has an element involving
        a sexual act or sexual contact with another;
(ii)    a criminal offense that is a specified offense
        against a minor;
(iii)   a Federal offense (including an offense
        prosecuted under section 1152 or 1153 of title
        18) under section 1591, or chapter 109A, 110
        (other than section 2257, 2257A, or 2258), or
        117, of title 18;
(iv)    a military offense specified by the Secretary of
        Defense under section 115(a)(8)(c) of Public Law
        105-119 (10 U.S. C. 951 note); or
(v)     an attempt or conspiracy to commit an offense
        described in clauses (i) through (iv).

The defendant did not plead guilty to a crime which
includes an element that meets the applicable definition of
a sex offense as set forth above.  The defendant did not
plead guilty to a criminal offense that has an element
involving a sexual act or sexual contact with another.
Rather, the necessary elements that must be proven beyond a
reasonable doubt to sustain a conviction for sexual conduct
for a fee in violation of G.L. c. 272, § 53A, do not
require a sexual act or sexual contact with another.

Under a modified categorical approach, the elements of
this crime and offense conduct do not meet the definition
of a sex offense.  In *United States v. Londono-Quintero*,
the First Circuit Court of Appeals explained

> if the charging papers simply contain the boilerplate
> statutory formulation and there are no jury
> instructions because of a guilty plea, it is
> appropriate for the sentencing court to look to the

conduct in respect to which the defendant was charged
and pled guilty, *not* because the court may properly be
interested ... in the ... nature of that particular
conduct, but because that conduct may indicate that
the defendant and the government both believed that
the [predicate] crime ... not the [non-predicate]
crime ... was at issue.  The inquiry should focus on
the meaning of the defendant's guilty plea- that is,
whether the defendant's plea constitutes an admission
to the predicate offense under a statute that
encompasses both predicate and non-predicate offenses.
*United States v. Londono-Quintero*, 289 F. 3d 147
(2001, 1ˢᵗ Circuit).

Under the T*aylor* approach, the rule of lenity applies

because to sustain a conviction of sexual conduct for a fee, it

is not necessary that an element involving a sexual act or

sexual contact with another be proven beyond a reasonable doubt.

*Taylor v. United States,* 495 U.S. 575 (1990)(**vacated** as

recognized in *United States v. Harrison*, 558 F.3d 1280 (11ᵗʰ Cir.

2009)(**overruled** in "D.C. Docket No. 9:11-cr-80138-DTKH-1..."

*United States v. Theramene*, D.C. Docket No. 9:11-cr-80138-

DTKH-1, No. 12-11665 (11th Cir. Apr 23, 2013)(**unpublished**).

The defendant combines his objection to special condition

number 6 contained on page 23 of the PSR.  The defendant objects

to any probation condition that requires him to register as a

sex offender under the Adam Walsh Child Protection and Safety

Act of 2006 because he did not plead guilty to a sex offense as

defined in 34 U.S.C., § 20911(1).

The defendant combines his objection to special conditions 9 through 12 regarding computers and internet contained on page 24 of the PSR. The defendant objects to any probation condition that involves the installation of a computer internet monitoring software because he did not plead guilty to a sex offense as defined in 34 U.S.C., § 20911(1) that includes images. Simply put, the government has not proven any fact beyond a reasonable doubt involving images, a sexual act or sexual contact with another.

## Application of 3553(a) Factors

A sentence of 3 years supervised probation is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). Here, the defendant respectfully recommends a sentence of 3 years supervised probation with a special condition that the defendant complete an outpatient mental health evaluation approved by the Probation Department and all recommended follow-up treatment, restitution in the amount of $360.00, and the mandatory special assessment fee of $100.00. The defendant's recommended sentence of 3 years supervised probation is sufficient, but not greater than necessary, to achieve the goals of § 3553(a)(2).

## A. Nature and Circumstances of the offense

On March 8, 2024, the defendant handled an in-person office visit with PERSON 1 at the Social Security Administration ("SSA") field office in Gardner, Massachusetts. *See* PSR, Paragraph 8. PERSON 1 was visibly upset and crying as she entered the SSA office looking for help to reinstate her disability benefits after losing her job. *Id.* The defendant was employed at the field Office as an SSA Claims Specialist, and met with PERSON 1 from approximately 3:56 p.m. to 4:15 p.m. *Id.* The defendant queried PERSON 1's Social Security file on an SSA computer system, which contained contact information for PERSON 1, including her phone number and address in New Hampshire. The defendant provided PERSON 1 with forms to complete but directed her to a New Hampshire SSA field office for processing because of her residence in that state. *Id.*

Approximately 20 minutes later, the Defendant used his personal cell phone to call PERSON 1 at the personal cell phone number of PERSON 1 that the defendant improperly obtained from SSA's computer system. PSR paragraphs 9 and 34. He told PERSON 1 that he understood she was in a "difficult situation" and that "maybe they could work something out that would benefit them both." PSR paragraph 9. PERSON 1 declined the defendant's offer and, instead, contacted law enforcement and SSA.

During the ensuing investigation, the defendant clarified in text messages and a consensually recorded phone conversation

that he was proposing to pay PERSON 1 for sex and attempted to negotiate a price.  PSR paragraphs 13-15.  The defendant continued his offer over a period of several months through text messages with an undercover law enforcement agent impersonating PERSON 1, including requests for nude photographs that were declined.  PSR paragraphs 16-31.

Eventually, the defendant attempted to reach an agreement with PERSON 1 that in exchange for $100.00 cash, she travel from New Hampshire and engage in sexual conduct with the defendant in a car at the parking lot of Great Wolf Lodge in Fitchburg, Massachusetts.  PRS paragraphs 27-31.  On October 11, 2024, the defendant arrived at the agreed upon location with $200.00 cash and was confronted by law enforcement.  The defendant admitted to law enforcement that he attempted to reach an agreement with PERSON 1 that in exchange for $100.00 cash, she travel from New Hampshire and engage in sexual conduct with the defendant in a car at the parking lot of Great Wolf Lodge in Fitchburg, Massachusetts.

B. History and characteristics

Dae Sung Kim was born in Worcester, Massachusetts to the marital union of Kyong Cha and Uk Kim.  Dae Sung was raised by both parents and experienced a traditional, strict upbringing. Dae Sung's parents immigrated from South Korea and maintained

strong traditional values.  His parents worked very hard and placed an extremely high value on education. As such, he was raised differently than most children around him.  PSR paragraph 59.

When Dae Sung was 1 year old, his parents sent him to live with his maternal grandparents on a farm in South Korea.  PSR paragraph 60.  Dae Sung and his grandparents lived on a farm in a two-room home.  It was a very simple life and Dae Sung had only 1 toy of his own.  Dea Sung was treated well by his grandparents, and they worked hard to keep him happy with the little that they had.  When Dae Sung's grandfather died at their home in South Korea, it was a very emotional time for Dae Sung and his grandmother.  She was forced to rapidly adjust to life without her husband while also maintaining a farm and raising a toddler. As such, Dae Sung spent a lot of time with the children who lived on a nearby farm.  PSR Pagaragraph 60.

Dae Sung initially considered his grandparents as his parents and did not know his biological parents or siblings. Before Dae Sung reached school age, his parents arranged for him to come home. Dae Sung recalls his reunion with his biological parents and siblings at Logan Airport.  His mother was hugging him and crying, but Dae Sung did not even know who she was.  PSR paragraph 61.

Dae Sung struggled with adjusting to life with his biological parents and siblings in America.  He did not know anyone in his life now and he deeply missed his grandmother.  He lost all stability in the smells and sounds around him that are essential for healthy development of a child.  Instead of growing and learning, his mind was constantly in survival mode dealing with so many new stimuli.

Unlike his siblings, Korean was Dae Sung's first language. This language barrier added to his struggle to bond with his siblings.  PSR paragraph 61.  The Kim family shares a high level of respect with no fighting in the home.  Dae Sung was occasionally yelled at or very rarely hit with a cooking spoon if he misbehaved.  PSR paragraph 67.

When Dae Sung was approximately 6 years old, he was taken into the woods by other children, tied to a tree, and rocks were thrown at him. Dae Sung was 'recused' by a friend, who he remains in touch with.  Dae Sung did not tell anyone else about this incident and blamed himself.  He recalls a lasting anxiety about branching out and meeting friends for many years.  PSR paragraph 68.

Upon his pretrial release, Dae Sung sought out a mental health and sex offender assessment at Gandara in Springfield, Massachusetts. As confirmed through the Probation records, the evaluation ultimately diagnosed him with adjustment disorder

characterized by anxiety and depressed mood.  According to the clinician's report, no treatment was recommended as the risk assessment tools could not be used without a conviction.  PSR paragraph 74.

Dae Sung is coping with his current circumstances. He stated that he is doing "okay" and has a good support system. He noted that his arrest was extremely daunting, and he was left feeling discouraged and disappointed. He has since worked to be the best he can be and has gained some self-worth through regaining employment.  PSR paragraph 75.

Dae Sung has never thought of or attempted suicide, despite admitting to feelings of extreme disappointment and sadness upon arrest. He copes through painting, skateboarding, photography, reading, exploring different areas, and spending time with his girlfriend and her daughter.  Dae Sung is focused on remaining compliant with his conditions, moving forward in life, and being productive.  PSR paragraph 76.

Dae Sung graduated from Auburn High School in 2007. He considered himself an average student and participated in sports (football, track, and tennis) and extracurricular activities such as amnesty international, the international club, chorus, and volunteering at the Worcester Public Library.  PSR paragraph 79.  Dae Sung then graduated from UMass Amherst in 2012 with a degree in Business. Dae Sung also studied abroad in South Korea

at the University of Seoul in the spring of 2009. Dae Sung then earned a graduate certificate from UMass Amherst in International Business. Dae Sung denies any learning or disciplinary issues in school. Dae Sung presented the Probation Officer with his diplomas as verification of his education.  PSR paragraph 79

Dae Sung was a notary while employed at Progressive Insurance (2017-2023), though this certification has expired. He also became licensed in property and casualty insurance in 2013. PSR paragraph 80.  His first language is Korean, but his primary language is English. He has not maintained his Korean skills and described his understanding as "elementary." Dae Sung has no military history.  PSR paragraph 81.

C. Sentence reflects seriousness of the offense

The defendant's sentencing recommendation of 3 years supervised probation reflects the serious nature of the offense. This was not a State-level prosecution of sexual conduct for a fee.  Dae Sung betrayed the public trust.  The betrayal was repeated in an escalating manner over a period of 8 months.  PSR paragraph 7 through 35.

D. Promoting respect for the law and protecting the public

The collateral consequences of this sentencing promote respect for the law by creating a permanent, public record condemning the offense conduct and identifying Dae Sung as untrustworthy. Dae Sung was terminated from his employment at the SSA. He was the subject of a widely publicized press release by the United States Attorney's Office. Mainstream media across the nation published online articles about Dae Sung. A simple google search for his name "Dae Sung Kim" brings up the February 28, 2025, press release explaining his conviction. See Exhibit 3. The consequences of this conviction are permanent and life changing. They promote respect for the law by creating a permanent, public record condemning the offense conduct and identifying Dae Sung as untrustworthy.

The GSR of 12 to 18 months is not necessary to protect the public from Dae Sung. During the period of pretrial release, probation and pretrial services' records indicate tDae Sung complied with all Court-ordered conditions of release. PSR paragraph 4.

E. Just punishment for the offense

A sentence of 3 years' supervised probation is a just punishment for the offense. For an incarcerated sentence is not necessary for PERSON 1 to get her just desserts. PERSON 1 gets

her just desserts because Dae Sung's reputation may never be restored.

## F. General and Specific Deterrence

General deterrence is achieved by a sentence of 3 years supervised probation. The sentence sends a clear message to the public and all government employees that misuse of data for personal interests will not be tolerated. The GSR sentence requested by the government of 12 to 18 months is not necessary for general deterrence. On a micro-level within the SSA, Dae Sung's betrayal was met with a termination from service. PSR paragraph 82 and 83. Dae Sung's termination followed by a federal prosecution reported widely in the news media sufficiently deters the public and other public servants from similar conduct.

Specific deterrence has already been achieved. A committed sentence is not necessary to put fear of punishment in Dae Sung's mind. The shame brought upon Dae Sung's Korean-immigrant family is so great that his own parents did not provide letters in support for sentencing. A committed sentence would add nothing to the fear and shame Dae Sung faces every day.

WHEREFORE, this Honorable Court should depart from the GSR to a sentence of 3 years supervised probation, sustain each of

the defendant's objections, and sentence Dae Sung Kim to 3 years

supervised probation with special conditions.

Respectfully submitted,
Dae Sung Kim
By Attorney,
/S/ Adam C. Russell
Adam C. Russell
BBO # 680155
RUSSELL DEFENSE FIRM
309 Washington Street
Brighton, MA 02135
617.858.6841 PHONE
617.507.5967 FAX
adam@russ911.com EMAIL

Dated:    July 28, 2025

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and I sent a copy via email to USPO Berry via email at ashley_berry@map.uscourts.gov, today.

UNDER THE PAINS AND PENALTIES OF PERJURY ON JULY 28, 2025

/S/ Adam C. Russell
Adam C. Russell